The next matter on calendar is Rodolfo Pena Estrada v. Todd Blanche, 25-2988. Good morning, Your Honors. May I please report? Oh, just one sec. Let me just, one sec here. That's right. You're both remote. Okay. Let's make sure. Can everyone, we can see both of you. You're looking wonderful, both, today. And can you both hear us? Yes. Okay. All right. And you each have 15 minutes, and that, Mr. Dempsey, would be total, including any rebuttal time. Did you aspirationally wish to reserve any time for rebuttal? Yes, Your Honor. Two minutes for rebuttal. All right. Thank you. Okay. We still have your full 15, so you may go ahead and proceed. Thank you. Thank you. Good morning. May it please the Court? Christopher Dempsey on behalf of Petitioner Estrada. This case presents a narrow but fundamental question about the limits of deference and credibility determinations. An immigration judge found Mr. Estrada not credible based on vagueness and lack of responsiveness, yet never observed him testify in person. He rather made his decision based on a cold-written record, similar to the way an appellate court reviews a cold-written record. And that is the whole reason that findings of fact based on observance of live, firsthand observed testimony received deference, because we cannot substitute our judgment of credibility based on what is observed at a human-to-human level in the courtroom. Just to clarify the parameters of what you're arguing, are you making a constitutional argument that the agency violated Pena's due process rights because the IJ made a credibility determination without observing Pena testify? Is that your argument? Yes, it's a constitutional due process argument that is subsumed within the credibility standard, which is substantial evidence. We would argue in the alternative it should receive de novo, but we're fine with substantial evidence because either way— Are you raising only a due process argument? I thought, as I read your brief, that you also linked in the statutory credibility rules. Well, yes, Your Honor, the real ID that apply, the totality of circumstances, determination of credibility does apply here. But the point is narrower, and that is when you are making credibility determinations that turn on the performance during testimony. And mind you, in these proceedings, this is not an English-speaking, native English-speaking individual. This is a Spanish-speaking individual who had an immigration court-provided interpreter. So we have many layers of communication here, and that just highlights how important it is to be able to look somebody in the eyes, observe the micro-expressions, all these things that any trial attorney knows are key to determination. But I guess what Judge Pius and I just want to find out, are you making a broader statutory argument that the Real ID Act requires an IJ to observe an applicant testify before making a credibility determination? And can you direct me in your brief where you clearly make that argument, or am I understanding that you're not exactly making that argument? The latter, Your Honor. We're not going directly after the statute to say programmatically, here's a challenge to the way things are done. We're saying in this case, it requires totality. And underneath totality, credibility determinations only receive deference because those determinations are made based on my observation. So you agree that the Real ID Act does not expressly require the IJ to observe an applicant before making a credibility? That's correct, but constitutional due process and dreams of decisions on deference and why it exists in the first place still support the result we're asking for, which is remand. Go ahead. Has any circuit held that the IJ must observe an applicant testify before making a credibility determination? No, it would have made our job today easier. No, and neither has this court. There are two cases cited by the government, Maswar and Singh, where it came up parenthetically, but was not directly addressed. In Maswar, the court, the court, your court. OK, I'm sorry. I stepped on Judge Pius. Let me ask you this. To what extent does demeanor come into play here? Demeanor comes into play because that is one of the sources of assessing credibility. And if you look at the decision here by the immigration judge over and over again, he talks about the vagueness of the testimony, unable to recall, lack significant detail, whether it was direct, straightforward responses, vague and non-responsive. Well, demeanor is in, you know, if you if you go to 8 U.S.C. 1158B, which is the credibility, the Real ID Act, it says considering the totality of this, of the circumstances and all relevant factors, a trier fact may base a credibility determination on the demeanor, candor or responsiveness. Then a list of a number of other factors, relevant, relevant factors. Right. So is it your argument, whether it's due process or statutory based, that you can't really assess whether a witness is is expressing truthfulness or, you know, is being can't candid with the with the decision maker or assessing responsiveness without observing them? Is that is that what the argument boils down to? Yes, Your Honor. Why? Why? Why? Responsiveness. Couldn't you can't you just look at the record and say, well, here was the question. Yes. And here's the response. And it doesn't address the question. Here's this is a very grossly oversimplistic example. But imagine if the test we're trying to determine if the solution to a mathematical equation is true or false. One plus one equals two. The record reads one plus one equals two. Now, let's say the person has got profound cognitive issues and they go one. Plus one is three. That can the record read one way. It will still read one plus one equals three. But but clearly that demonstration tells us how much information is embedded in the presentation of live test. Well, in both of those situations, the answer is just wrong and not responsive. So why do we have to see that? Because it's wrong and not responsive could be based on a lack of veracity or it could be based on a lack of cognitive ability, training, understanding. And again, here we have a language barrier. So there's a lot going on in the courtroom with the translation of every question and answer pauses in between. There could be looks of confusion, all all things you cannot get on a record. Right. Well, but they do. But we're in this record like, you know, I've been a trial judge and I've looked at people. And sometimes you look at someone and you go, that person is a lion's sack of you know what? Because you say, well, they every time you ask them a question, they looked away or they, you know, you and you describe that with great specificity. And so it is important that you're looking at the person then and that it's, you know, sort of a little bit like a picture's worth a thousand words. Sometimes seeing someone face to face is a completely. But I'm having a hard time seeing in this record where any of the determinative factors are going that level, not saying the person's not looking at me or not saying that, you know, every time it's like you look at me and I and you say something and I roll my eyes. OK, that or I go, I'm making tisking sounds or something like that. Most married people have experienced that kind of response. So where is this record like that? Well, that's the exact problem is if the if the immigration judge knew at the time he presided over the proceedings, it would be read and decided by a different immigration judge. He would have been wise to note all the observances of the presentation of testimony by petitioner. But he did not. And because he did not, there wasn't sufficient evidence that is a matter of due process for which the subsequent. But what if you had like hypothetically you have two documents and it's not disputed there in the record when the person was initially interviewed and it said, I have no fear of returning to my country. The reason that I came is that I I want to get Botox and better cosmetology in California or something like that. And then in another place and suddenly when they testify, they say, oh, I was just so afraid and X, Y and Z happened. Why can't you just compare something like that on the record? It doesn't really matter whether I'm rolling my eyes or doing anything. There's flat out statements that I said I wanted to come for Botox and the other says I was terrified by the cartel. That's pretty inconsistent. It is that that's a good example, Your Honor, because if there are diametrically opposed written or recorded statements, then that may be maybe sufficient. But in this case, that's not all there was. Well, but are you asking us to find that you can never make that determination without seeing people or just you can't in this incident? You cannot invoke a credibility determination based on lack of responsiveness or a basic. So that's a due process violation out the gate. Correct, Your Honor. But if they had framed the decision differently, if they had only relied on documentary inconsistencies outside the context of observed live testimony and declared as a finding of fact that they could never, no matter what their demeanor was in the courtroom, they could not have overcome the written record of evidence adverse to their cause. Let me ask you this. A due process violation basically, not basically, but usually requires, I say usually because there are some instances where it doesn't, but usually requires some showing of prejudice. That's right. What's where? Where's the prejudice here? Sure. Now, it's important to remember that the standard for assessing prejudice in this context is may have affected the outcome. May not, you know, if then with, you know, logical certainty, but may have. Do you make a prejudice argument in your brief? Do you even address prejudice? I mean, I have to go control F for the word prejudice, but I know we addressed that it was impossible for the court to have made the findings of fact, the credibility determinations, and that the result, if it was based on live in-person testimony, a different result may have followed. You can look at your brief when you're on, when you're listening to the government to direct us to where you address prejudice. Just one question. Is there any context, not just immigration, criminal anywhere, or civil, where this type of due process claim has been made that the finder of fact has to be the same person that witnesses the testimony to make a credibility determination? I can't say that it's ever come up because it ordinarily is. I mean, ordinarily is what? Outlier case. I have not seen any jurisprudence in a criminal, let's say a criminal trial. I think we all know that will probably not happen, that you would have a different finder of fact that wasn't at trial make the decision. Let me ask you this. If your argument is construed as a statutory argument as well, what's the showing that you have to make? Do you have to make a prejudice showing, or do you have to argue that it was harmful, not harmful, or the government has to argue that it was harmless? Well, I think in the context of statute or what's at issue is whether or not the proceedings were fundamentally unfair. And here our argument in essence is that the proceedings were procedurally defective and therefore fundamentally unfair because the credibility determinations were made on a written record. If we could do that, then no court of appeal would afford any deference to the finder of fact ever because it could just read the transcript and make up its own mind. This issue is a lot deeper than this case. It's a lot more important. And systemically or programmatically, I think there's great risk here that if this court countenances the rubber stamping of adverse credibility determinations by immigration judges that did not observe the testimony, we are allowing more cases like this to arise. So do you want to save the balance of your time for a rebuttal? Yes, Your Honor. Okay. We asked you a lot of questions, so I'll give you two minutes on rebuttal. Thank you. Thank you, Your Honor. All right. We'll hear from the government. Good morning. Good morning. May it please the court, Roseanne Perry on behalf of the Attorney General. The judge's due process claim lacks merit because the record demonstrates that he was provided with a full and fair hearing. He did not show error or substantial prejudice, which is required for a due process violation. Admittedly, though, you've seen sort of what the focus is here, so I'm not meaning to – I want to make the best use of your time. In cases like Ling Wang v. Holder, we have referenced that the I.J.'s ability to observe an applicant as a reason of why we give I.J.'s credibility determination significant deference. How, if at all, does that factor into your review here? Well, in those cases, they had to do with the reviewing court's review of the case and not actually the assigned I.J. who is making the determination. There's no indication that the assigned I.J. couldn't make a determination based on the transcript in this case. It's like when the I.J., instead of – the presiding I.J. makes an oral decision and instead of making an oral decision, decides to make a written decision based on the transcript. What's to say that the newly assigned I.J. can't do the same? Well, let's say hypothetically, if the I.J. had – if they had said, you know, I just don't believe you because, you know, the way that you're not – you know, you're not looking at me when I'm asking you questions or you're making faces at inappropriate times. So I just conclude, you know, I'm looking at you and we've all made these determinations, whether it be with our children or anyone. I think you're lying because I don't – you know, you're looking really shifty. You look really shifty. If that were the case here, could a second person that hadn't seen those shifty behaviors make that determination on a cold record? Well, there was no demeanor finding in this record, but there were other aspects, other factors that the – Just a straight demeanor finding. Are you arguing that that wouldn't be problematic? If the I.J., the presiding I.J. made comments about the demeanor in the transcript, I don't believe that that would be problematic. In this case, the I.J. made comments about the non-responsiveness about – of the petitioner in the – during the hearing. And there were other factors that he relied on, the deciding I.J. So I don't believe that's an issue here and this record before the court. Well, non-responsiveness, I guess if I were making the argument, I could say could be – it could be determined on what the actual answer is. That would be one way to look at it, and that supports your argument. But it could also be because, oh, you looked up at the ceiling or, oh, it took you really long to answer the question or, oh, you were – you know. And those would be two different non-responsiveness, wouldn't they? Couldn't non-responsiveness possibly be demeanor at certain times? Our position is no, that it's not demeanor. In the – I know it's your position here, but it's – but couldn't there be instances where non-responsiveness would require seeing the person to say? Our position is that it's not answering the question and not demeanor. It's simply not answering the question.  So hypothetically – but I'm just – you know, sometimes you can ask for too much. You can shoot yourself in the foot here. You know, on the one hand, non-responsiveness could be, well, that you just – it shows you didn't really answer the question that was asked. You know, is it red or is it blue? And then you went on and talked for 15 minutes about a book. Okay, that could arguably be non-responsive just on its face. But if the non-responsiveness required how long did it take you or what was your face doing or what were you – you know, all of that, isn't that a different type of non-responsiveness? I believe if the IJ is actually making comments in the transcript regarding the demeanor or the non-responsiveness, that is sufficient for the deciding judge to rely on. So what your position is is that demeanor wasn't necessary – demeanor finding wasn't necessary here? Is that what the argument is? Yes, the demeanor finding wasn't necessary because there are other – in the totality of the circumstances, the IJ relied – Don't you think that's part of the totality though, demeanor? It's a non-exhaustive list. So the IJ could have relied on many things here. It could have relied on the inherent plausibility of the testimony, the inconsistencies, the demeanor, the candor, the responsiveness. There are so many other factors, and he did rely on vagueness and specificity, the lack of specificity. What does vagueness mean here? Well, he just was – I can't recall exactly when he was vague. He was vague with regard to – I can't recall exactly what were the – IJ said he was vague, what the circumstances were. Counsel, can I ask, would the government agree that Congress gets to set what is the level due process required in immigration proceedings? Yes, I would agree with that. And so the very fact that Congress did not require in the statute, in the Real ID Act, that the prior fact be the same prior fact in making a creditability determination, doesn't that end the due process inquiry there? I believe so. It's in the regulations that the IJ can be reassigned. Is it in the statute? It's not in the statute. It's in the regs. Yeah, but the statute doesn't say that – when it directly addresses credibility determinations, it never says that another IJ can't rely on another IJ's proceedings to find credibility, right? No, but it also doesn't say that they can make a determination otherwise, like on the merits either. So do you come up with a definition or an idea of what vagueness means here in this context? With regard to the warning that he received at the workplace, he was not clear about what – there was no testimony about what his customers discussed regarding the government and how it all related to him. He did not provide details about what actions or activities caused the increasingly serious threats or about the consistency of the threats. So he was just vague as to why he was harmed at all. He gave no real answer to why he was harmed at all. So would you have any issue with – and I'm not saying this is what we're going to do because we haven't obviously conferenced on this case. But if we were to hold that an IJ does not violate due process by making an adverse credibility determination based on transcripts alone, where the factors relied upon by the IJ to make that adverse determination can reasonably be ascertained by review of the transcripts? I'm sorry, you said can you make the determination that – No, I – no. Okay, go back. Okay. Would you have any issue if we were to hold that an IJ does not violate due process by making an adverse credibility determination based on transcripts alone, where the factors relied upon by the IJ to make that adverse credibility determination can reasonably be ascertained by review of the transcripts? I'm sorry, I lost the audio. Okay. I lost the audio. All right. Let's hope third time's the charm here. Okay.  All right. Would you have – I mean, obviously, I don't know. You seem to be advocating for this would always be okay. I think you're – that may be a road too far. But would you have any issue with us holding that an IJ does not violate due process by making an adverse credibility determination based on transcripts alone, where the factors relied upon by the IJ to make that adverse credibility determination can reasonably be ascertained by review of the transcripts? Yes, I would be – I think that's reasonable. Well, thank you. You would not have a problem is what I'm – Yes. No, I would not have a problem. Well, I mean, are you sure you want that, though? Then we're prophylactically setting the boundaries, but we don't – but wouldn't you rather the boundaries be set in a case where that actually is breached? Because Judge Callahan's formulation would cabin where the IJ's ability to make credibility findings. Are you sure you really want to do that here? No, I don't believe we'd want to do that here. I mean – So bottom line, what's your position, just that there's just no due process violation here, period, end of story? Well, here, no due process violation occurred because he had the opportunity to present evidence and testimony. There was no error. There's no substantial prejudice. He, you know, was questioned by both the government counsel and his attorney and the IJ. He has not shown error or substantial prejudice here. But that's not even what he's raising. We're talking past each other here. What he's saying is he isn't saying that he didn't have due process – that he had a due process violation at the first hearing. What he's saying is the due process violation occurred when someone that wasn't at the hearing reviewed the record. Yes, but he's not showing that he didn't have a full and fair hearing, which is required for due process violation. All right, but hypothetically, if the IJ at the first hearing where the IJ was present said, I am – I just don't believe you because of the look on your face, okay? Then go to the – fast forward. That IJ is not here. Another one looks at it. Can that second IJ find adverse credibility saying, I don't like the look on your face when that IJ never saw the look on the face? I don't believe so, but there are other aspects of the transcript. I know this is not that case. I'm just asking you to think hypothetically. So that what I was saying is, let's say hypothetically, I'm not willing to say every time you have a due – every time you have a fair hearing the first time and then someone else looks at the record that – and doesn't – you know, is a different person, I'm not willing – if I'm not willing to say there can never be a due process violation based on credibility if the whole basis of credibility was the look on the face, but I am willing to say, hey, if I can see that you gave inconsistent answers or any – that might you – that might not be a due process violation. Correct. You're not being nimble here. You're just saying no one can ever have a due process violation when a second IJ looks at it if the first hearing was fair. Correct. Yes. Okay. All right. All right. I give up. I surrender. Okay. Do you have anything else that you want to add? Otherwise, substantial evidence supports the agency's denial of petitioner's applications for relief and protection and respond to respectfully request that the court deny the petition for review. Okay. Thank you. Thank you. You have two minutes for a rebuttal. Thank you, Your Honor. First, to address your question about prejudice, the word prejudice does not appear in the petition or the initial brief, but credibility – because credibility was dispositive here – But wouldn't you have to show prejudice to win here? Well, we did. I'm just explaining that the word prejudice – You just didn't say it. We have to imagine it. We didn't say the word prejudice, but we made a forcible argument that any error in how the determination was made necessarily affects the outcome. That's where prejudice is addressed, or at least implied. Credibility controlled the outcome, so the defect in making that determination necessarily establishes prejudice. It goes to the core issue of credibility. As to your framing earlier, the question you kept asking, counsel for the government, that is exactly what I was arguing before. If the record makes it self-evident what inconsistencies form the basis for an adverse credibility determination, that would be sufficient. But here, when we have a mere descriptive term used over and over again, not responsive, without any further description – So the hypothetical rule that I proposed, I know you don't agree that happened here. Okay, I understand that. But does that hypothetical rule give people room to argue where demeanor or things are not present? Does it give them room? It depends on what the IJ determines credibility on. That's if they cite the transcript and say, I can read here and here that these are diametrically opposed, 180 degrees different than what you testified, and I see that here on the transcript. You lack credibility. That would be sufficient, not the human-to-human – Well, if I'm willing to concede that you can make that argument, then some transcripts would be okay and some would not, and it depends on that. Yes, Judge Bumate has a question for you. Just one more question. Why doesn't Congress get to set the bounds of due process here? Well, and it did in the little – if you look at little 2i or lowercase 2i and 23, sustaining burden and credibility determination, at least four times by my count they use the word a trier effect may base a credibility determination on, et cetera, et cetera. Yes. A trier effect in plain language necessarily implies someone who tried the case, who observed – No, it says a trier effect. That's right, Your Honor. I mean that's even more generalized than the trier effect. It's actually a trier effect. It doesn't even have to be the trier effect. So I think in that hypothetical, if you run that all the way out, you could be a trier effect on a cold record that somebody else took the testimony and assembled. Correct. That would be, I think, given the implications of a removal order and what happens and the liberty interest involved probably. Yeah, but Congress gets to set that. Well, they said a trier effect, and the court gets to determine, consistent with constitutional due process, if the two can be squared, thus avoiding a constitutional conflict between the statute because we don't want to invalidate. That's why I asked you whether or not this was a statutory argument. Well, it's not – the thrust of it isn't, but I went back to the statute because the court knows better than me that that's the beginning point. And so I just keep seeing a trier effect. And all I can think of in my plain English brain is a judge or a jury. Okay. Thank you both for your argument in this matter, and this will stand submitted. Court is in recess until tomorrow at 9. Thank you. All rise.
judges: PAEZ, CALLAHAN, BUMATAY